IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARMEEN MARIA RAY,<br><br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No. CIV-18-00638-SM |

## MEMORANDUM OPINION AND ORDER

Sharmeen Maria Ray (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 12, 16.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1] Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citations to the state court records will refer to the original pagination.

## I. Administrative determination.

### A. Disability standard.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

### B. Burden of proof.

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Id.*

### C. Relevant findings.

#### 1. Administrative Law Judge (ALJ) findings.

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis to decide whether Plaintiff was disabled during the relevant timeframe. *See* AR 12-23; *see also* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step process). Specifically, the ALJ found Plaintiff:

(1) had not engaged in substantial gainful activity since her alleged onset date of November 13, 2010;

(2) had the severe impairments of first, asthma, second, hypertension; third, diabetes; fourth, headaches; fifth, obesity; sixth, depression; and seventh, borderline intellectual functioning;

(3) had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(4) had the residual functional capacity[2] to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), with various limitations, including that she can understand, remember, comprehend, and carry out simple work-related instructions and tasks, can work with supervisors and co-workers on a regular basis, cannot work with the general public, but could adapt to routine changes in the working environment;

(5) could perform jobs that exist in significant numbers in the national economy, such as mail sorter, laundry worker, and hand packer; and so,

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

3

(6) was not disabled.

AR 19-35.

### 2. Appeals Council findings.

The SSA's Appeals Council denied Plaintiff's request for review, so the ALJ's unfavorable decision is the Commissioner's final decision in this case. *Id.* at 1-5; *see Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standard.

The court reviews the Commissioner's final decision to determine "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). In applying that standard, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (citation omitted).

### B. Issues for judicial review.

Plaintiff argues the ALJ erred (1) "by applying the new mental health listings when all expert testimony and argument centered around the prior versions of the listings"; (2) because "[t]he ALJ's application of the new listings violates the Supreme Court's retroactivity jurisprudence"; and (3) in "fail[ing] to reconcile the VE's findings that [Plaintiff] could perform jobs with a

4

reasoning level of two in the DOT with the RFC that limited [her] to simple tasks." *See* Doc. 19, at 2.

### C. Analysis.

#### 1. Application of the new listings.

Plaintiff's first two arguments stem from the same issue, and the court will address them together. In September 2016, the SSA issued revised rules regarding medical criteria used to evaluate mental disorders. Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016), at 66, 138 (effective Jan. 17, 2017). These rules included changes to the "paragraph B" criteria used by an ALJ to assess mental impairments. *See id.* at 66, 164. Previously, the four broad functional areas included: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. pt. 404, subpt. P, app. 1. 12.00(C)(1)-(4) (Sept. 29, 2016 - Jan. 16, 2017). After revision, the four broad functional areas consist of: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 81 Fed. Reg. 66138-01 (Sept. 26, 2016), at 66, 161 (effective Jan. 17, 2017). The regulations provide that federal courts reviewing an SSA decision "us[e] the rules that were in effect at the time [the SSA] issued the decision[ ]. *Id.* n.1

Plaintiff complains that the ALJ applied listings that were neither in effect when she applied for DIB and SSI nor when she appeared at the hearing. Doc. 19, at 15. Because the hearing testimony centered around the previous regulations, she argues, the ALJ could not elicit accurate testimony from witnesses. *Id.* at 15-16.

To start, the revised rules were already promulgated before the December 1, 2016 hearing date, with an effective date of January 17, 2017. Plaintiff appeared at the hearing with counsel. Plaintiff's counsel could have asked the medical experts at the hearing about the revised listings. And the revised medical criteria clearly outline what rules to apply. 81 Fed. Reg. 66138-01 n.1.

Additionally, the rules state that "[w]e expect that Federal courts will review our final decisions using the rules *that were in effect at the time we issued the decisions.* If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." *Id.* (emphasis added).

As to Plaintiff's argument that application of the new rules violates the Supreme Court's retroactivity jurisprudence, a court must "apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is a statutory direction or legislative history to the

contrary." *Bradley v. Sch. Bd. of Richmond*, 416 U.S. 696, 711 (1974). "Retroactivity is not favored in the law . . . and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

This Court is unaware of any case in the Tenth Circuit that has specifically addressed this issue. As it applies to statutes, "the general rule is that courts will not apply [a new] statute in ways that would create new legal consequences for events completed before the statute was enacted." As long as it "do[es] so explicitly," however, Congress "has the power to override this traditional presumption and direct the statute's retroactive application." *Grigsby v. Barnhart*, 294 F.3d 1215, 1219 (10th Cir. 2002) (quoting *Daniels v. United States,* 254 F.3d 1180, 1187 (10th Cir. 2001) (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994))).

Plaintiff cannot establish any manifest injustice. As the Commissioner points out, both versions of listing 12.05 require the same basic diagnostic criteria: a developmental disorder (with an onset date before age 22) requiring (1) deficits in intellectual functioning as shown by an IQ score of 70 or below; and (2) corresponding deficits in "adaptive functioning." Doc. 27, at 15 (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05 (2015, 2017)). Plaintiff's counsel engaged in extensive questioning of the medical expert at the hearing regarding Plaintiff's most recent IQ test, which resulted in a score of 71. AR

7

57-63. The ALJ correctly noted that under the then-in-effect 12.05(C), "it looks . . . like a two part . . . test," the first requiring an IQ score of 70 or below. *Id.* at 63. That test applies to both versions of Listing 12.05.

Looking to the law in effect and as to whether manifest injustice would result, the revised rules clearly state that they were effective January 17, 2017 and that they applied to all "claims that are pending on or after the effective date." 81 Fed. Reg. 66138-01, at 66, 138. Therefore, the revised rules apply to Plaintiff's claim because they were the law in effect for the case and, as explained further below, application of the revised rules will not result in a manifest injustice to Plaintiff, as she would not meet the listing under either set of rules.

### 2. Limitation to simple tasks.

At step five, the ALJ must "investigate and elicit a reasonable explanation for any conflict" between the DOT and a VE's testimony. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999).

The ALJ asked the vocational expert to:

> Assume a hypothetical individual of the claimant's age, educational and vocational history. The individual can occasionally lift and carry 20. Frequently lift and carry ten and walk six/eight, sit six/[e]ight, occasionally push and pull, including the operation of hand controls. Occasionally climb ramps and stairs, never climb ladders, ropes, and scaffolding, she could frequently balance, occasionally stoop, kneel, crouch, but never crawl, no manipulative visual

> or communicative limitations. She could understand, remember and carry out simple work related instructions and tasks. She could work with supervisors and coworkers on a regular basis, cannot work with the general public but could adapt to routine changes in the work environment.

AR 65. The vocational expert testified there would be work for this individual. *Id.*

The DOT states that level-2 reasoning requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal with problems involving a few concrete variables in or from standardized situations." DOT App. C (Components of the Definition Trailer), § III, 1991 WL 688702. Each of the three occupations the VE identified at step 5 requires a reasoning level of 2: DOT 222.687-022 (mail sorter); DOT 589.685-038 (laundry worker); and DOT 559.687-074 (hand packer). The vocational expert stated her testimony was consistent with the Dictionary of Occupational Titles. AR 67.

A reasoning level of two requires a worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." *See* DOT 222.687-022; DOT 589.685-038;

DOT 559.687-074. Plaintiff argues she would struggle to perform "detailed but uninvolved" instructions, given her mental limitations. Doc. 19, at 29.[3]

The Tenth Circuit has indicated that a limitation to simple work is consistent with level 2 reasoning. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (stating that a limitation to simple and routine work tasks "appears more consistent" with level 2 reasoning than with level 3 reasoning); *see also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (holding that a limitation to simple, repetitive work was "consistent with the demands of level-two reasoning"). But the Circuit has not determined whether a limitation to detailed but uninvolved *instructions* is consistent with level 2 reasoning. *See Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) ("[W]e have not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions[.]").[4]

---

[3] Much of Plaintiff's argument centers on a challenge to the ALJ's RFC assessment, rather than level-2 reasoning level. Doc. 19, at 29-31 (pointing to various medical evidence and education level); Doc. 31, at 5-6 (focusing on GED Scale). But the challenge she raises is purely a legal one, not a challenge to the RFC.

[4] Plaintiff cites *Paulek* to support her position because *Paulek* cites an Eighth Circuit case, *Lucy v. Chater*, 113 F.3d 905 (8th Cir. 1997) for the proposition that "simple instructions [are] inconsistent with both level-two and level-three reasoning." Doc. 19, at 27-28 (citing *Paulek*, 662 F. App'x at 909.) But *Paulek* did not affirmatively adopt *Lucy*, rather it noted the Eighth Circuit's position and stated that the Tenth Circuit "h[as]not spoken to whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions[.]" *Paulek*, 662 F. App'x at 594.

10

The court finds that, on its face, the description for a reasoning level of 2—the ability "to carry out detailed but uninvolved written or oral instructions"—does not conflict with Plaintiff's RFC limitation to carrying "out simple work-related instructions and tasks." *See Stokes*, 274 F. App'x at 684 ("Ms. Stokes' second argument is that the ALJ's limitation to simple, repetitive and routine work should be construed as a limitation to jobs with a reasoning-level rating of one. We disagree."); *see also Money v. Barnhart*, 91 F. App'x 210, 215 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that [the claimant's] work be simple, routine and repetitive."); *Forssell v. Berryhill*, 2018 WL 6440882, at *8 (W.D. Okla. Dec. 7, 2018) (holding that Plaintiff's limitations of "performing simple, routine, and repetitive tasks" did not "inherently conflict with reasoning level two."); *Northcraft v. Berryhill*, 2018 WL 1115213, at *2 (W.D. Okla. Mar. 1, 2018) (finding that Plaintiff who had "marked difficulties understanding, remembering, and carrying out detailed instructions" could perform work with a reasoning level 2); *Couch v. Berryhill*, 2017 WL 1194344, at *4 (E.D. Okla. Mar. 13, 2017) ("In accordance with the court's findings in *Hackett*, a restriction to simple work is consistent with this reasoning level [of 2]."); *Roth v. Colvin*, 2017 WL 394676, at *9 (W.D. Okla. Jan. 11, 2017) (finding that an RFC determination allowing a plaintiff to perform jobs with "simple[,] repetitive, routine instructions and work decisions" was "consistent with 'reasoning level 2'") *adopted*, 2017 WL 395215

(W.D. Okla. Jan. 27, 2017); *Goleman v. Colvin*, 2016 WL 3556958, at *4 (W.D. Okla. May 6, 2016) (where RFC limited claimant to "simple, routine, repetitive instructions," "[t]he ALJ properly relied on the jobs identified by the VE with a reasoning level of two."). The Court finds that Plaintiff is not entitled to relief on her contention that the ALJ erred in concluding she could perform work with a reasoning level 2 in light of her residual functional capacity.

## III. Conclusion.

For the reasons discussed above, the court AFFIRMS the Commissioner's final decision.

ENTERED this 3rd day of April, 2019.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE